**S & C CORPORATION, Plaintiff**

v.

**DELMA HODGE, COMMISSIONER OF PROPERTY & PROCUREMENT, and GOVERNMENT OF THE VIRGIN ISLANDS, Defendants**

Civil No. 137/1990

Territorial Court of the Virgin Islands

Div. of St. Thomas and St. John

April 17, 1990

HENRY E. THOMAS, ESQ., St. Thomas, V.I., *for plaintiff*

DARYL DODSON, ESQ., Assistant Attorney General (Department of Justice), St. Thomas, V.I., *for defendants*

CHRISTIAN, *Judge*

## MEMORANDUM OPINION AND ORDER

### I. INTRODUCTION

This matter came on for trial on February 27, 1990, at 11:00 a.m., on the Motion of Plaintiff for a Temporary Restraining Order, Preliminary Injunction and Permanent Injunction. The Plaintiff appeared by its President, Stanford Anthony, and its Attorney, the Law Offices of Andrew L. Capdeville (Henry E. Thomas, Esquire, of counsel). The Defendants appeared by Delma Hodge, Commissioner of Property and Procurement (hereafter "the CPP") and Daryl Dodson, Esquire, Assistant Attorney General. The Court heard the testimony of the parties and their witnesses, received in evidence such other pertinent proofs as were offered by them, heard the arguments and representations of counsel, and took the matter under advisement. The questions ultimately presented for decision of the Court were whether Plaintiff made out a case entitling it to be granted injunctive relief or money damages. We answer both questions in the negative.

### II. FACTUAL BACKGROUND

For several years immediately prior to the letting of the present disputed contract, by the grace of at least three Commissioners of the Department of Public Works (hereafter "DPW"), the Plaintiff

49

enjoyed the rather unique, special privilege of selling the precise services to the Government of the Virgin Islands (hereafter "the Government"), without complying with either the requirements of bidding prescribed by 31 V.I.C., Section 236, or of purchasing on the open market, as prescribed by Section 239 id. Indeed, its last such contract was issued to the Plaintiff by the present Commissioner, dated January 16, 1990,[1] without the approval of the CPP as required by 31 V.I.C., Section 234(a).[2]

The Governor of the Virgin Islands (hereafter "the Governor"), issued a Proclamation on October 11, 1989, made effective on September 17, 1989, declaring a State of Emergency in the Territory due to Hurricane Hugo. On October 16, 1989, the Commissioner of Public Works (hereafter "the CPW"), issued to the CPP a Request for Proposals (hereafter "RFP"), not pursuant to the Proclamation for Emergency open market contract purchases pursuant to 31 V.I.C., Section 239(a)(1) and (a)(2) as the Governor's Proclamation reads in haec verba, but for a negotiated contract for professional services pursuant to 31 V.I.C., Section 239(a)(4).[3] On October 20, 1989, a Request for Quotations (hereafter "RFQ"), based on said RFP, was issued by the CPP to seven potential bidders, including Plaintiff and S & S Corporation. Only two responded to the RFQ, the Plaintiff and S & S Corporation.[4]

The CPP, pursuant to law, appointed a three-member evaluation committee which, after meeting twice with the DPW on November 15 and December 18, 1989, in the process of making its evaluation,

---

[1] See Plaintiff's Trial Exhibit 3, Letter dated January 16, 1990, from Commissioner of Public Works Leo Francis to Stanford Anthony, President of S & C Corporation.

[2] This Subsection reads: "No purchase shall be made by any department or agency of the Government or by any employee of the Government for any agency of the Government except by written order approved by the Commissioner of Property and Procurement and issued in accordance with Section 233 of this Title." Section 233 reads: "The Commissioner of Property and Procurement shall not issue any order for delivery [1] on a contract or [2] on an open market purchase unless the request for purchase bears certification that there is to the credit of the department, office, board, institution or other agency concerned a sufficient unencumbered apportionment of its appropriation balance, in excess of all unpaid obligations, to defray the amount of such order."

[3] See Defendants' Trial Exhibit 1 (List of persons invited to bid) and Plaintiff's Trial Exhibit 5.

[4] See Plaintiff's Trial Exhibit 1 (for Plaintiff's quotations) and Defendants' Trial Exhibit 2 (for the quotations of S & S Corporation) in response to the RFQ received from CPP.

recommended that the contract be awarded to S & S Corporation primarily, but not solely, because of the substantial price advantage to the Government. See Footnote 4. The CPP agreed with the findings and recommendation of the Evaluation Committee, and S & S Corporation was therefore notified by her, on January 16, 1990, that it was the successful bidder, and was accordingly awarded the contract. Simultaneously, the Plaintiff was notified by DPW that the contract its Commissioner had awarded it on January 16, 1990, was terminated, and it should remove its equipment from the work sites and submit its bill for services rendered to the date of termination to the Government.[5]

Having lost the contract negotiated for the first time in many years according to law for rendering these services to the Government, after it had enjoyed the benefits flowing therefrom without such interference, Plaintiff filed this lawsuit, for injunctive relief only. Neither in the caption of the action nor in the lengthy ad damnum clauses does Plaintiff pray for damages as an alternative remedy. It prays for extraordinary relief only, viz, recission of the contract; restraining order, preliminary injunction and permanent injunction; and writ of mandamus.[6]

In a lengthy and discursive presentation made in Plaintiff's Complaint and first Brief, summarized in its post-trial Brief, Plaintiff lists the following grounds why it contends the Court should rescind the contract and enjoin its enforcement:

1. That the contract is in excess of $1,000.00 and therefore violates 31 V.I.C., Section 239(a)(3);

2. That the contract was let pursuant to the issuance of a Proclamation by the Governor declaring the existence of a state of emergency in the Territory, pursuant to 31 V.I.C., Section 239(a)(1) and 31 V.I.R.R., Section 239–5 (June 19, 1974), but each requisition, purchase order or contract issued by virtue thereof does not cite the Governor's Proclamation by number and date;

3. That the contract process did not comply with the requirements of an open market purchase pursuant to 31 V.I.C., Section 239(a)(2) including, although not limited to, all requisitions issued were not clearly stamped "Public Exigency";

4. More telling, however, is that V.I.R.R., Section 239–6(c) mandates that: "Purchases made or contracts issued pursuant to 31

---

[5] See Plaintiff's Trial Exhibit 3.

[6] This writ was abolished by Rule 81(b) of the Federal Rules of Civil Procedure (1951).

V.I.C., Section [sic] 239(a)(1) and (2) and in accordance with this subchapter shall not be effected, although approved by the Commissioner of Property and Procurement, *unless and until approved by the Governor as is required by 31 V.I.C., Section 239(b)* (Emphasis supplied). If the Defendants entered into their agreement with S & S Services Corporation pursuant to 31 V.I.C., Section 239(a) or (b), [Plaintiff probably means 239(a)(1) or (2)], then this necessary approval by the Governor was not obtained";

5. The contract was for professional services, and "competitive negotiation was practicable", but there was no "competitive negotiation", as required by 31 V.I.C., Section 239(a)(4);

6. That if the services are personal, they are required to be performed by an individual contractor in person—not by a concern. If professional services, they may be performed either by an individual contractor in person or a concern. Section 239–8(a)(1) V.I.R.R.;

7. That subdivision (a)(2) of the above provides:

> The Commissioner shall appoint a Selection Committee to assist in the evaluation and selection. After reviewing the qualifications and proposals the Committee shall select from the firms considered not less than three firms, in order of preference, deemed to be the most highly qualified to provide the services required. The Committee shall conduct discussions severally with the firms selected regarding anticipated concepts and the relative utility of alternative methods of approach for furnishing the required services.
>
> The Committee shall recommend to the Commissioner the selection of the firm it considers meeting the criteria herein mentioned and most likely capable of performing in the best interest of the Government. [Underscoring ours].

And this mandate was not literally followed in this case, especially since the Committee did not communicate with Plaintiff "other than to seek a clarification on one of its prices" and "this is a fatal flaw";

8. That 31 V.I.R.R., Sections 239–2, 3 and 4 were violated because the Evaluation Committee considered only the price factor in making its evaluation, selection and recommendation to the CPP of who the successful bidder should be.

In its reply post-trial Brief, the Defendants counter with the following arguments on the basis of which they urge the Court to deny the relief prayed for by Plaintiff:

1. That Plaintiff's contentions are predicated on the wrong statutory peg—that the contract was let under the Governor's declaration

52

of a state of emergency pursuant to 31 V.I.C., Section 239(a)(1), or pursuant to the existence of a public exigency as provided by Section 239(a)(2). Rather, the contract was a negotiated contract let pursuant to 31 V.I.C., Section 239(a)(4), for professional services, which even Plaintiff admits in Paragraph 21 of its Complaint. Section 239(a)(4) reads:

> Open Market Purchases. Supplies, material and equipment may be purchased and contractual services negotiated for, in the open market without observing the provisions of Section 236 of this Title, provided the purchase or contract is for professional services; provided that such services shall be procured by competitive negotiation, wherever practicable.

2. That all the several requirements of the applicable subsection, 31 V.I.C., Section 239(a)(4), were complied with by the CPP in letting the contract to S & S Corporation, and therefore there is no legitimate ground for the Court to interfere, particularly where so to do, as in the instant case, would be not only injurious, but disastrous, to the public welfare,[7] and further, where the Court is asked to grant the Plaintiff, not just ordinary, but extraordinary, relief.

3. That, if in fact Plaintiff has suffered any legal wrong, injunctive relief would be inappropriate on the basis of the fact situation of the case, as the injury is not irreparable and recovery of money damages would provide Plaintiff with an adequate remedy.

## III. DISCUSSION

We agree with the Defendants that from the outset the contract was treated as a negotiated contract for professional services and let pursuant to 31 V.I.C., Section 239(a)(4) and not pursuant to the Governor's declaration of a state of emergency, pursuant to 31 V.I.C., Section 239(a)(1) or pursuant to 239(a)(2) when a public exi-

---

[7] The testimony of Acting Director of Solid Waste, Joseph Patrick, spelled out the consequences that would result if S & S Corporation is restrained from performing its contract: the only authorized dumps on St. Thomas and St. John would be required to close immediately, at a time when usage is triple the normal, pre-Hugo level; although even then the service to the community was clearly substandard. Plaintiff suggests instead that if the impediment of the S & S contract is removed by injunctive relief or rescission, Plaintiff could then resume providing these services, preventing the closing of the dumps. But Plaintiff has never had any legal contract to provide these services, and could not legally provide them even if the S & S contract were rescinded.

53

gency exists. Therefore, Plaintiff's contentions that the contract is void or voidable for the reasons that the aggregate amount thereof is in excess of $1,000.00; the documents prepared thereunder do not refer to the Governor's Proclamation of a state of emergency; the requisition(s) for these services were not stamped "Public Exigency" in each case as required by the provisions of the statute and applicable rules; and that the contract was not approved by the Governor, which reasons are numbered one through four above, are without merit.

■ It is inexplicable to us how Plaintiff could contend that the CPP failed to obtain the services contracted for "by competitive negotiation". We hold that what constitutes such negotiation in the case sub judice lies in the sound discretion of the CPP; that in the instant case, she exercised such discretion by issuance of the RFQ to seven prospective bidders; that there were only two responses to such request; that she appointed an evaluation committee to examine, study and determine the comparative merits of these responses; that the committee met and deliberated not once, but twice, before rendering its assessment; and that the CPP concurred in the recommendation of the committee in awarding the contract to S & S Corporation. Since the Court cannot find that the process utilized by the CPP amounts to an abuse of discretion, amounts to what constitutes "competitive negotiation" within the intendment of the law applicable and governing the performance of the CPP, we disagree with Plaintiff that there was no compliance with this requirement.

As to the ground for rescission of the contract listed as number six above, it is not clear to the Court precisely what the contention of the Plaintiff is, for while it states the applicable rule, it does not indicate just how it claims the rule was violated. Here the services are professional and may be, and are being, performed by a concern.

We do not agree with Plaintiff that although Plaintiff was given an equal opportunity with others similarly situated to bid on the services required, and lost the bid after a fair evaluation of all bids submitted to the CPP mainly because its bid was materially disadvantageous to the Government, especially price-wise, that merely because the Selection Committee did not discuss the matter with it personally more than once, because of this one factor only, the entire process should be abrogated; that this fact is important enough to rescind the contract, notwithstanding the certain immediate disastrous results of such action to the public health and welfare (see

54

Footnote 7), and begin the entire process anew. The Court is not satisfied that this was the intention of the Legislature or of the makers of the Rule in question. Furthermore, the Rule does not require more than one discussion.

Finally, as to the eighth ground advanced by Plaintiff why the contract should be rescinded, while there is good reason to believe that the main reason why the contract was not awarded to it was the substantially higher price bid by it over that of its competitor who won the bid, nowhere in the record of the case—whether the pleadings, the evidence adduced, or otherwise—is there any statement that the price factor was the only one considered by the Evaluation Committee in making its recommendation to the CPP that the contract be awarded to S & S Corporation, and not to Plaintiff. Therefore, we hold this ground is without merit. We do not believe Plaintiff is contending the Committee could select not less than three firms out of two bidders.

Both in its Complaint and Briefs, Plaintiff cited a plethora of additional authorities which have merit as far as the propositions they are claimed to support are concerned, and to that extent make for interesting reading, but which we find to be inapplicable to the precise issues the Court is called upon to decide.

The Court finds from the evidence that as both parties admit—the Plaintiff in Paragraph 21 of its Complaint, and the Defendants in their Brief in opposition to Plaintiff's Motion for a Temporary Restraining Order—the contract was for an open market purchase of professional services, pursuant to 31 V.I.C., Section 239(a)(4); that the services were requested by the DPW in its RFP to the CPP; that as required by this subsection, since it was practicable to do so, these services were in fact procured by competitive negotiations, in that RFQ's were forwarded to seven potential bidders by the CPP, and only two responded; that pursuant to law, the CPP appointed an evaluation committee who evaluated the bids and recommended that the contract be awarded to S & S Corporation; that the CPP concurred and awarded the contract accordingly; and while it is the practice of the CPP to obtain the signature of the Governor to all contracts for professional services, and the instant contract was not signed by the Governor, 31 V.I.C., subsection 239(b) requires the Governor's signature only where two categories of open market negotiated contracts are in question, "public exigency" contracts let by virtue of subsection 239(a)(2) and "public emergency" contracts let by virtue of sub-

section 239(a)(1); that the contract was let by the only governmental authority empowered to do so, the CPP, as provided by 31 V.I.C., Section 234 (see Footnote 2); and that the contract became effective as an open market purchase contract negotiated pursuant to 31 V.I.C., Section 239(a)(4) upon being signed by the CPP and S & S Corporation. For all the lengthy, discursive presentations made by Plaintiff, the Court has not been able to identify a single deficiency in the procedures followed by the CPP in awarding this contract.

We agree with Plaintiff's statement appearing on Page One of its original Brief: that "[i]n order to support a Motion for the entry of a temporary restraining order [or a preliminary or permanent injunction], the Plaintiff must show the existence of irreparable harm and the absence of an adequate [and speedy] remedy at law; the probability of ultimate success on the merits; and that the threat of harm [to the Plaintiff] outweighs the harm [or threat thereof] to the opposing party"; in the case before the Court that the public interest will not be disserved or subverted by the granting of injunctive relief.

It is well settled that this is the law in this jurisdiction. See Punnett v. Carter, 621 F.2d 578 (3d 1980), citing Commonwealth of Pa. Ex Rel Creamer v. U.S. Department of Agriculture, 469 F.2d 1387 (3d 1972); Continental Group, Inc. v. Amoco Chemical Corporation, 614 F.2d 351 (3d Cir. 1980); W.I. Co. v. Govt. of the V.I., 643 F. Supp. 869, (D.C.V.I. 1986); Govt. v. Virgin Islands Paving Co., Inc., 19 V.I. 177 (D.C.V.I. 1982); see also 11 C. Wright and A. Miller Federal Practice and Procedure Section 2948, at 430–31 (1973). We hold that Plaintiff has failed to meet these criteria, either individually, or as a whole.

With reference to the third argument made by the Defendants in their post-trial Brief, that if Plaintiff suffered any legal wrong, since money damages would provide an adequate remedy, it would be inappropriate to grant injunctive relief, it is noteworthy that Plaintiff has not sought any such alternative remedy. But even if it did, the Court would immediately perceive and be confronted with two obstacles. The first is insuperable: Plaintiff has suffered no legal wrong and so is entitled to no legal remedy. The second is, not only is there no request for such relief, but no formula has been presented to the Court to measure such damages. To be entitled to such an award, it is the duty of the Plaintiff to establish these elements by acceptable pleadings and a preponderance of the evidence.

## IV. CONCLUSION

Since Plaintiff has failed to establish that the Commissioner of Property and Procurement failed to comply with any of the material requirements for the letting of a valid contract to S & S Corporation, or that the contract awarded pursuant to 31 V.I.C., Section 239(a)(4), the rules and regulations promulgated thereunder, or other applicable law, was in fact an invalid contract, an Order will be entered, denying Plaintiff's Motion.

## ORDER

This matter having come on for hearing this 27th day of February, A.D., 1990, on the Motion of Plaintiff for a temporary restraining order, a preliminary injunction, and a permanent injunction; and the Plaintiff having appeared by its President, Stanford Anthony and by its Attorney, the Law Offices of Andrew L. Capdeville (Henry E. Thomas, Esquire, of counsel); and the Defendants having appeared by Delma Hodge, Commissioner of Property and Procurement, and Daryl Dodson, Esquire, Assistant Attorney General; and the Court having heard the testimony of the parties and their witnesses, received in evidence such other pertinent proofs as were offered by them, heard the arguments and representations of counsel, and issued its Memorandum Opinion on even date herewith; and the Court being fully advised and satisfied in the premises, it is hereby

ORDERED, ADJUDGED AND DECREED, that Plaintiff's Motion is DENIED.